IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL NO. 4:04cr16

TONY ORLANDO HUGHES,

Defendant.

## ORDER

This matter comes before the Court on Tony Orlando Hughes's ("Defendant") pro se motion entitled "Motion for Resentencing under the First Step Act pursuant to 18 U.S.C. § 3582(c)(1)(A)" ("Motion" or "Motion for Compassionate Release"). ECF No. 68. In such Motion, Defendant requests that the Court grant him a sentence reduction because the stacking of his 18 U.S.C. § 924(c)(1)(A) convictions (Possessing and Brandishing a Firearm in Furtherance of a Crime of Violence) constitute extraordinary and compelling circumstances. Id. at 1. Defendant's Motion for Compassionate Release also alleges that "he should receive full credit for his state time he served before being picked up by the U.S. Marshalls[sic] on August 5, 2007." Id. at 3. For the reasons stated herein, the Court hereby **DENIES** Defendant's Motion. ECF No. 68.

I.  PROCEDURAL BACKGROUND

On February 5, 2004, a federal grand jury sitting in Newport News named Defendant and fifteen co-defendants in a sixty-seven (67) count criminal indictment, charging Defendant with: Conspiracy to Possess with the Intent to Distribute and to Distribute Cocaine and Crack Cocaine, in violation 21 U.S.C. § 846 (Count One); Possession with the Intent to Distribute "Crack," in

1

violation of 21 U.S.C. § 841(a)(1) (Counts Thirty-Nine and Sixty Four); Possession with intent to distribute Cocaine, 21 U.S.C. § 841(a)(1) (Counts Nineteen, Forty-Five, Fifty-Six, and Sixty-One); Distribution of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) (Counts Two, Four, Five, Six, Seven, Nine, Ten, Eleven, Twelve, Fourteen, Fifteen, Seventeen, Eighteen, Twenty, Twenty-One, Twenty-Three, Twenty-Four, Twenty-Six, Twenty-Seven, Twenty-Nine, Thirty-One, Thirty-Two, Thirty-Four, Thirty-Five, Thirty-Six, Thirty-Seven, Thirty-Eight, Forty, Forty-One, Forty-Two, Forty- Four, Forty-Six, Forty-Nine, Fifty, Fifty-Two, Fifty-Four, Fifty-Seven, Fifty-Eight, Fifty-Nine, Sixty, Sixty-Two, Sixty-Five, Sixty-Six, and Sixty-Seven); Distribution of Cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts Three, Twenty-Eight, Thirty, and Forty-Eight); and Use, Carry, and Possession of Firearm during Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1) (Counts Eight, Thirteen, Sixteen, Twenty-Two, Twenty-Five, Thirty-Three, Forty-Three, Forty-Seven, Fifty-One, Fifty-Three, Fifty-Five, Sixty-Three). ECF No. 1.

On May 3, 2004, Defendant appeared before the Honorable United States Magistrate Judge Tommy E. Miller and pled not guilty to all of the charges in the Indictment. On July 13, 2004, the Government file an Information pursuant to 21 U.S.C. 851(a)1), certifying Defendant's prior convictions to enhance Defendant's statutory penalties. ECF No. 10. Defendant's jury trial began on July 14, 2004, and on July 19, 2004, Defendant was found guilty of Count One (Conspiracy to Possess with the Intent to Distribute Cocaine and Crack Cocaine); Counts Two, Seven, Nine, Twelve, Eighteen, Twenty-Three and Twenty-Four, Thirty-One and Thirty-Two, Thirty-Five through Thirty-Eight, Forty, Forty-Six, Forty-Nine and Fifty, Fifty-Two, Fifty-Four, and Fifty-Seven through Fifty-Nine (Distribution of Cocaine Base in violation); Counts Three and Forty-Eight (Distribution of Cocaine); Counts Eight, Thirteen, Twenty-Five, Thirty-Three, Forty-Seven, Fifty-One, Fifty-Three, and Fifty-Five (Use, Carry, and Possess Firearm During Drug Trafficking

2

Crime); Counts Nineteen, Fifty-Six, and Sixty-One (Possession with the Intent to Distribute Cocaine). ECF No. 13. Defendant was acquitted of Counts Ten, Eleven, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty, Thirty-Four, Thirty-Nine, Forty-One, Forty-Four, Forty-Five, and Sixty-Four. Id. Upon a motion from the Government, Counts Four, Five, Six, Fourteen, Fifteen, Sixteen, Seventeen, Twenty, Twenty-One, Twenty-Two, Twenty-Six, Forty-Two, Forty-Three, Sixty, Sixty-Two, Sixty-Three, Sixty-Five, Sixty-Six, and Sixty-Seven were dismissed.

On November 29, 2004, Defendant sentenced to a total term of imprisonment of two thousand six hundred sixteen (2,616) months, with firearm-related offenses accounting for two thousand one hundred sixty (2,160) consecutive months of this term. ECF No. 31. Defendant's sentence also included a supervised release term of release of ten (10) years. Id. It is important to note that Defendant's sentence was determined, in part, by application of the previously-mandated "stacking" provisions of § 924(c)(1)(C).[1]

Defendant timely filed a notice of appeal to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") on December 2, 2004. ECF No. 33. The Fourth Circuit affirmed this Court's judgment in an unpublished opinion on October 20, 2005. United States v. Hughes, 150 F. App'x 271, 272 (4th Cir. 2005), cert. denied, 126 S. Ct. 1894, 164 L. Ed. 2d 569 (2006); ECF Nos. 45–46. On April 23, 2007, Defendant filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"), ECF No. 47, which this Court denied and declined to issue a certificate of appealability on January 10, 2008, ECF No. 50. Defendant

---

[1] In 2018, Congress passed the First Step Act, which amended § 924(c) to eliminate the "stacking" of mandatory sentences for successive violations charged in the same indictment. Under the First Step Act, a 25-year sentence for a second § 924(c) conviction may only be imposed after the first conviction had become final. See First Step Act of 2018, Pub. L. No.115-391, § 403, 132 Stat. 5194, 5221-22 (2018); 18 U.S.C. § 924(c)(1)(C). "... Congress declined to retroactively apply the elimination of the "stacking provision" to individuals convicted prior to December 21, 2018 ... Accordingly, the Court has no authority to retroactively apply § 403 of the FIRST STEP Act to automatically reduce Petitioner's sentence solely based on the elimination of the stacking provision." McCoy v. United States, No. 2:03-CR-197, 2020 WL 2738225, at *3 (E.D. Va. May 26, 2020).

3

appealed the Court's denial of his § 2255 Motion to the Fourth Circuit on March 14, 2008. ECF No. 51. The Fourth Circuit refused to issue a certificate of appealability and dismissed Defendant's appeal in an unpublished opinion on September 23, 2008. ECF Nos. 55, 56; United States v. Hughes, 294 F. App'x 30 (4th Cir. 2008). On December 17, 2008, Defendant filed a pro se motion to reduce Defendant's sentence pursuant to 18 U.S.C. § 3582(c)(2) based on the Crack Cocaine Amendments[2] to the Sentencing Guideline, ECF No. 58, which the Court denied by written Order on February 19, 2009, ECF No. 61.

On July 21, 2016, the Court submitted a letter to the Acting Pardon Attorney, Bob Zauzmer, to express its support for Defendant's clemency application to reduce Defendant's sentence. ECF No. 64. On October 28, 2016, President Barack Obama commuted the majority of Defendant's sentence to a term of only three hundred sixty (360) months by an executive grant of clemency. ECF No. 65.

On February 24, 2017, the Clerk of the Court docketed a pro se letter from Defendant suggesting that he may be entitled to a sentence reduction under the Fair Sentencing Act of 2010 (which reduced the crack-to-powder cocaine ratio to 18:1) or Amendment 782. ECF No. 66. On March 1, 2017, the Court responded to Defendant's pro se letter informing Defendant that any sentence reduction he may have been entitled to under the Fair Sentencing Act of 2010 or Amendment 782 reduction would not result in a reduction of his original sentence greater than the two thousand two hundred fifty-six (2,256) month reduction Defendant received by an executive grant of clemency in 2016. ECF No. 67.

---

[2] The Crack Cocaine amendments included Amendment 706, as modified by Amendment 711, and Amendment 715 to the Sentencing Guidelines. Amendment 706, as modified by Amendment 711, is retroactive as of March 3, 2008, and Amendment 715 is retroactive as of May 1, 2008.

4

On August 21, 2020, the Clerk of the Court docketed the instant Motion for Compassionate Release. ECF No. 68. Between August 21, 2020 and September 14, 2020, the Clerk of the Court docketed seven-character letters in support of Defendant's Motion. ECF Nos. 69–76. On October 5, 2020, the Court issued an order directing the Government to file a response to Defendant's Motion, the Probation Office to provide a position on Defendant's Motion and allowing Defendant to file a reply to the Government's response. ECF No. 77. On November 30, 2020, the Government filed its response in opposition to Defendant's Motion for Reconsideration ("Government's Response" or "Response"). ECF No. 83. On December 18, 2020, the Probation Office filed a position opposing Defendant's release from prison under compassionate release provision of the First Step Act ("Probation's Position Paper" or "Position Paper"). ECF No. 84. Defendant did not file a reply to the Government's Response. Defendant's Motion for Compassionate Release is now before the Court. ECF No. 68.

## II. APPLICABLE LAW

"Generally, a court may not modify a term of imprisonment once it has been imposed except" in narrow circumstances. United States v. Wirsing, 943 F.3d 175, 179, 183 (4th Cir. 2019) (citing 18 U.S.C. § 3582(c)). Congress may enact statutory exceptions to this general rule, and Defendant brings his Motion for Compassionate Release under an exception provided by the compassionate release provision of the First Step Act ("FSA").

In 2018, Congress passed the FSA. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Relevant here, the FSA amended the procedures by which defendants can seek reductions in their sentences through compassionate release. Previously, a defendant could only petition the Bureau of Prisons ("BOP") Director for compassionate release,[3] who could then move the district

---

[3] The BOP uses the terms "compassionate release" and "reduction in sentence" interchangeably, see https://www.bop.gov/policy/progstat/5050_050_EN.pdf at 1, and the Court will do the same.

court for compassionate release. See U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018) ("U.S.S.G."). Now, the FSA allows defendants, for the first time, to petition district courts directly for compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i).

To request compassionate release, a defendant must comply with the requirements set forth in 18 U.S.C. § 3582(c). First, as a threshold matter, the statute requires the defendant adhere to certain procedural requirements. § 3582(c)(1)(A). Specifically, a defendant must either have exhausted all administrative rights to appeal a failure of the BOP to bring a motion on his behalf, or the warden must have failed to act on the defendant's request for thirty (30) days after receipt, whichever is earlier. Second, a district court is "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise"—including the now merely instructive guidance of U.S.S.G. § 1B1.13. United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (quoting United States v. Zullo, 976 F.3d 228, 230 (2020)). In fact, the district court may also consider "the factors set forth in section 3553(a) to the extent that they are applicable," U.S.S.G. § 1B1.13, "and whether '[t]he defendant is . . . a danger to the safety of any other person or to the community,' . . . because these considerations remain highly relevant to whether a reduction in sentence is warranted in this case." United States v. Spencer, No. 2:11CR30, 2021 WL 713287, at *2 (E.D. Va. Feb. 24, 2021) (citing U.S.S.G. § 1B1.13(2) and United States v. Dean, Case No. 15-CR-0339(1), 2020 WL 7055349, at *1–2 (D. Minn. Dec. 2, 2020)).

### III. DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Defendant's Motion for Compassionate Release requests that the Court grant him a sentence reduction because the stacking of his 18 U.S.C. § 924(c)(1)(A) convictions (Counts Thirteen, Twenty-Five, Thirty-Three, Forty-Seven, Fifty-One, Fifty-Three, Fifty-Five: Possessing and Brandishing a Firearm in Furtherance of a Crime of Violence) constitute "extraordinary and

6

compelling reasons." ECF No. 68 at 1–2. More specifically, Defendant argues that he is eligible for compassionate release because his harsh sentence of two thousand six hundred sixteen (2,616) months[4]—where two thousand one hundred sixty (2,160) months accounted for his § 924(c) convictions—would not be imposed under the law today. Id. at 2. In fact, Defendant seemingly argues that since Section 403 of the First Step Act "discontinued the former practice of 'stacking' multiple firearm convictions under 18 U.S.C. § 924(c)(1)(A) before a prior conviction under the same subsection became final[,]" (Allen v. United States, No. 2:11-CR-192, 2021 WL 926208, at *3 (E.D. Va. Mar. 9, 2021)) a number of district courts "have found that this 'drastic change' in the law, eliminating such lengthy mandatory sentences, constitutes an extraordinary and compelling reason to consider a sentence reduction." United States v. Baker, No. 10-20513, 2020 WL 4696594, at *3 (E.D. Mich. Aug. 13, 2020).

Defendant is correct that "[m]ore and more courts have found that exceptional rehabilitation; large sentencing disparities; and COVID-19's unprecedented dangers all constitute extraordinary and compelling reasons to grant compassionate release [and a sentence reduction]," United States v. Brown, No. 4:05-CR-00227-1, 2020 WL 2091802, at *7 (S.D. Iowa Apr. 29, 2020). In fact, the Fourth Circuit recently held that district courts may "permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act." United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020). However, such relief is only available if a defendant has exhausted his administrative remedies with the BOP pursuant to Section 3582(c) before seeking judicial relief.

---

[4] As noted several times in this Order, Defendant on October 28, 2016 received an executive grant of clemency from President Barack Obama which commuted his sentence to a total term of three hundred sixty (360) months. ECF No. 65.

7

To such end, Defendant attaches as an exhibit to his Motion his requests for administrative remedies requesting compassionate release submitted to the warden of FCI Yazoo City. ECF No. 68-2. His first request for compassionate release is dated April 7, 2020, to which he claims he received no response and resubmitted on June 1, 2020. Id. at 1. At some unknown date, it appears that FCI Yazoo City staff responded to Defendant's request telling Defendant that if he does not receive a response to file a motion with the Court. Id. On July 6, 2020, Defendant submitted another request for administrative remedy form, and Defendant again asserts that he did not receive a response based on either request. Id. at 3.

The Probation Office in its Position Paper confirms that Defendant submitted a request for compassionate release and that FCI Yazoo City staff responded telling that if he did not receive a response within two months, that he should file a motion with the Court directly. ECF No. 84 at 1. However, Probation also states in its Position Paper that "FCI Yazoo City reported to BOP personnel that they have not received any requests for compassionate release from [Defendant]. According to BOP personnel, it appears that there was not a formal response or denial to the compassionate release request." Id. at 2. The Government in its Response is silent as to whether Defendant has exhausted the administrative remedies requirement.

It appears to the Court that Defendant has exhausted the administrative remedies requirement of Section 3582(c), as Defendant filed a request for compassionate release on April 7, 2020 and did not receive a response from the BOP within thirty days. United States v. Soliz, No. 1:16CR00028-001, 2020 WL 2487563, at *2 (W.D. Va. May 14, 2020) ("In other words, when a warden denies an inmate's request within 30 days, the inmate needs 'to exhaust his administrative remedies to appeal the warden's denial before filing.'") (citation omitted). Accordingly, the Court

finds that Defendant has exhausted his administrative remedies and now turns to the merits of Defendant's Motion.

The Court finds that Defendant does not present extraordinary and compelling reasons to grant his Motion for Compassionate Release. The Court acknowledges that the sentencing regime under which the Court sentenced him in 2004, with its "stacking" of § 924(c)(1)(C) convictions, is no longer the law and that were the Court to sentence him today, he would face a significantly lower sentence. And while this sentencing disparity in some unique circumstances can constitute an extraordinary and compelling reason to reduce a sentence, the Court declines to do so in the instant case. This is because President Barack Obama in October of 2016 commuted the majority of Defendant's sentence to a term of three hundred sixty (360) months. ECF No. 65. This two thousand two hundred fifty-six (2,256) month reduction is greater than any sentence reduction Defendant could have received based on the sentencing disparities from the stacking of his § 924(c) convictions. The Court acknowledges and commends Defendant on the strides he has made while in BOP custody, but it is unwillingly to grant Defendant a further sentence reduction at this time.

Finally, Defendant's Motion for Compassionate Release seemingly asks the Court to give him jail credit for his state prison time that he served before being placed in the custody of the United States Marshals on August 5, 2007. ECF No. 68 at 3. More specifically, Defendant argues that BOP incorrectly designating his sentence as beginning on December 20, 2007, when it should have been designated as beginning on November 29, 2004. Id. Unfortunately, this Court does not have the authority to consider this claim, as crediting decisions are "within the purview of the Attorney General, acting through the Bureau of Prisons." United States v. Preister, 423 Fed.Appx.

9

Case 4:04-cr-00016-RGD-TEM Document 85 Filed 04/29/21 Page 10 of 10 PageID# 281

307, 308 (4th Cir. 2011) (citing 18 U.S.C. § 3585(b)).[5] Indeed, "[a]fter a district court sentences a federal offender, the Attorney General ... has the responsibility for administering the sentence," rather than the sentencing court. United States v. Wilson, 503 U.S. 329, 335 (1992). Moreover, the Court has consulted with the BOP Designation and Sentencing Computation Center ("DSCC"), who confirmed that Defendant is not eligible for jail credit because the sentence for his instant offense was consecutive to his previous state prison sentence. Therefore, Defendant's request is denied.

## IV. CONCLUSION

Accordingly, Defendant's Motion for Compassionate Release is hereby **DENIED**. ECF No. 68.

Defendant is **ADVISED** that he may appeal from this final Order by submitting a written notice of appeal to the Clerk of the United States District Court, United States Courthouse at 600 Granby Street, Norfolk, Virginia 23510. Such written notice must be received by the Clerk within fourteen (14) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record and to the Defendant.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 29, 2021

---

[5] "Once a defendant is remanded to the Bureau of Prisons to begin serving his sentence of imprisonment, the Bureau of Prisons should compute his jail-time credit. If a defendant believes the amount of credit he has received or failed to receive is in error, he may seek administrative review of the calculations. It is only after he has exhausted his administrative remedies that he may seek judicial review." Newsome v. United States, No. 4:10CR53, 2012 WL 12821745, at *1 n.2 (E.D. Va. June 1, 2012) (citing Wilson, 503 U.S. at 335).